560 So.2d 1273 (1990)
CITY OF PENSACOLA and Travelers Insurance Company, Appellants,
v.
Paul WINCHESTER, Appellee.
No. 89-999.
District Court of Appeal of Florida, First District.
April 18, 1990.
Rehearing Denied June 7, 1990.
Thomas F. Condon, Bruce A. McDonald, Pensacola, for appellants.
Barry Silber of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellee.
JOANOS, Judge.
In this workers' compensation appeal, the City of Pensacola and Travelers Insurance Company (employer/carrier) challenge an order of the judge of compensation claims, which awarded compensation benefits and rejected employer/carrier's defense of entitlement to an offset for pension benefits. The issues concern the propriety of the judge's rulings that (1) the employer must pay worker's compensation benefits which, when combined with the claimant's pension disability benefits, exceed the claimant's pre-injury average weekly wage; and (2) the employer is not entitled to any offset in workers' compensation benefits due to the pension benefits *1274 paid by the employer to the claimant. We affirm.
Claimant is a City of Pensacola firefighter, who retired due to hypertension and cardiovascular disease. During his twenty-three years of active service with the city, claimant contributed eleven percent of his wages to his pension benefit plan with the city. Upon his retirement in February 1988, claimant began receiving in-line-of-duty disability retirement benefits. See § 112.18(1), Fla. Stat. (1987).
Article VI of the Pensacola City Code governs the pension benefits at issue in this case. Section 4(c) of the pension fund code provides for the claimant's mandatory contributions to the fund. Although two types of benefits are paid to retired firefighters, depending upon whether the retirement was due to in-line-of-duty disability or illness, or due to the normal course of events, the amounts of the benefits paid are the same. Benefits paid under both retirement procedures come from the general pension fund. However, pursuant to subsection 4(m) of the pension fund code, the city must reimburse the firemen's pension fund for every dollar paid to an in-line-of-duty retired firefighter. For internal operating convenience, rather than reimburse the pension fund at the end of each fiscal year as provided by the code, the city pays the pension benefits directly to the retired firefighter from the city's operating fund.
Section 24(1) of the pension fund code contemplates the circumstances existing in this case, where a city firefighter becomes disabled in the line of duty, and thus becomes eligible to receive both pension and workers' compensation benefits. Section 24(1) of the pension fund code provides:
(1) If any employee eligible to [for] the benefits of this act shall die under such circumstances as to entitle his widow or children to benefits hereunder, such widow or children shall be entitled to receive such benefits in addition to any workmen's compensation payable to them or any of them; and in the event of disability of any pensioner, he shall be entitled to such pension as is hereby provided in addition to any workmen's compensation that may be payable to him.
At the hearing on this matter, an administrator who has worked for ten years in the day-to-day operation and administration of the firefighters pension fund, testified that the city has interpreted section 24(1) of the pension fund code to mean that there is no offset, i.e., up until the instant controversy, in-line-of-duty retired firefighters have received both their disability pension and their workers' compensation benefits. The parties stipulated that the combined total of claimant's workers' compensation benefits and his in-line-of-duty pension benefits exceeds his pre-retirement average weekly wage by slightly more than one hundred dollars per week.
In rejecting the employer/carrier's claim that they were entitled to reduce any workers' compensation benefits due by the amount of pension benefits received by the claimant, the judge of compensation claims found, among other things, that the pension plan was a part of the claimant's overall benefit plan and was funded by employee contributions. As such, the judge concluded there was nothing inherently unjust about claimant's combined pension and workers' compensation exceeding his pre-injury average weekly wage. We agree.
Resolution of this case turns upon the interplay of the Workers' Compensation Act, various provisions of the claimant's employment agreement, and case law dealing with the propriety of an offset in the context of combined pension and workers' compensation benefits. After twenty-three years of service as a Pensacola fireman, claimant in this case retired at age 48, pursuant to the statutory presumption that 
[a]ny condition or impairment of health of any Florida municipal ... fireman caused by tuberculosis, heart disease, or hypertension resulting in total or partial disability or death shall be presumed to have been accidental and to have been suffered in the line of duty unless the *1275 contrary be shown by competent evidence... .
§ 112.18(1), Fla. Stat. (1987). See Smith v. City of Miami, 552 So.2d 245 (Fla. 1st DCA 1989).
Article VI, § 24 of the Pensacola Code, provides that "in the event of disability of any pensioner, he shall be entitled to such pension as is hereby provided in addition to any workmen's compensation that may be payable to him." (Emphasis supplied.) Article VI, Section 4(m) of the Pensacola Code requires the City to reimburse the firemen's relief and pension fund "for the total amount of pensions or benefits paid to employees, their widows or children, whose disability or death was incurred in the line of duty." (Emphasis supplied.)
Employer/carrier in this case contend that the decision in Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989), establishes their entitlement to an offset of workers' compensation benefits due to pension benefits paid to claimant by the city. In Barragan, in response to a certified question, the supreme court ruled that a judge of compensation claims may apply section 440.21, Florida Statutes, to award an increase in the amount of workers' compensation to offset reductions made in a claimant's pension benefits pursuant to a contractual provision. The case involved a City of Miami ordinance which provided for the offset of pension benefits against workers' compensation benefits. The court noted that Chapter 440 has preempted local regulation on the subject of workers' compensation, and that section 440.21 prohibits an employer from deducting workers' compensation benefits from an employee's pension benefits. In ruling that the Miami ordinance could not be sustained under state law, the court stated:
The employer may not offset workers' compensation payments against an employee's pension benefits except to the extent that the total of the two exceeds the employee's average monthly wage.
545 So.2d at 255. We conclude that the contractual agreement existing in this case, which was not present in Barragan, renders the last clause of the quoted language inapplicable in this instance.
In Barragan, the court reviewed a line of cases which held that workers' compensation benefits may not be reduced by the amount of benefits payable to a claimant under a group medical or pension plan. See Jewel Tea Co., Inc. v. Florida Industrial Commission, 235 So.2d 289, 291 (Fla. 1969); Brown v. S.S. Kresge Co., 305 So.2d 191 (Fla. 1974); Domutz v. Southern Bell Telephone & Telegraph Co., 339 So.2d 636 (Fla. 1976). The Jewel Tea decision suggests that entitlement to workers' compensation benefits must be determined without reference to other insurance plans an employee might have. Brown and Domutz follow suit, but contain the added caveat that the combination of workers' compensation benefits and sick leave or pension benefits ought not exceed the employee's average weekly wage. See Brown, 305 So.2d at 194; Domutz, 339 So.2d at 637. See also K-Mart v. Young, 526 So.2d 965, 968 (Fla. 1st DCA 1988).
These decisions all recognize that an injured employee is entitled to receive workers' compensation benefits, in addition to benefits under any other insurance or pension plan he or she might have. However, the cases do not address the specific situation presently before us. Here, an injured claimant who is entitled to the maximum compensation rate is also entitled, by virtue of his employment contract, to receipt of his full disability pension benefits "in addition to any workmen's compensation that may be payable to him," with the result that the combination of benefits exceeds the claimant's pre-injury average weekly wage. Thus, the question presented here is whether the Barragan rationale can operate to bar claimant's receipt of all the benefits afforded to him under his employment agreement.
An analogous contract provision, which operated to the advantage of the employer, was given full force and effect in Chambers v. St. Regis Paper Co., Kraft Division, *1276 410 So.2d 983 (Fla. 1st DCA 1982). While Chambers and his employer were in the process of negotiating a lump-sum settlement for permanent benefits, Chambers applied for the company's early retirement/disability pension benefits. A few days later, the parties agreed to a settlement. Thereafter, the employer notified Chambers that he would not receive his first disability/retirement check until 1984 because the company was taking a setoff in the amount of compensation benefits paid under the settlement. Chambers argued that the employer's action impermissibly diminished his workers' compensation benefits. The court disagreed, noting that the setoff was provided in the terms of the pension plan, which stated that "your Plan benefits will be reduced by any other disability benefits for which the Company contributes  either directly or indirectly." 410 So.2d at 984.
In a similar vein, in Marion Correctional Institution v. Kriegel, 522 So.2d 45 (Fla. 5th DCA 1988), review denied, 531 So.2d 1354 (Fla. 1988), the employer/carrier opposed the claimant's petition for a rule nisi to enforce a compensation order, arguing that if claimant's leave time were reinstated, the claimant would receive both full pay as well as workers compensation benefits for the same period, thereby obtaining a sum greater than his average weekly wage. On the authority of Brown v. S.S. Kresge, Co., Inc., the court agreed with the employer that workers' compensation benefits, when combined with sick leave benefits, should not exceed the average weekly wage. However, the court went on to state that
the payment of accrued sick and leave time is an independent contractual right that the claimant and the employer have agreed to as a condition of the claimant's employment. A claimant is entitled to full workers' compensation benefits, in addition to any benefits he has under a separate leave and sick time agreement.
522 So.2d at 47. Kriegel was cited with approval in Barragan. See also 4 A. Larson, Larson's Workman's Compensation Law § 97.41(c) (1989).
The pension plan at issue in this case states in express terms that a disabled pensioner is entitled to pension benefits in addition to workers' compensation benefits. Pursuant to the Chambers rationale, claimant in this case is entitled to receive full workers' compensation benefits and pension benefits. The city was clearly aware of the plain language of the agreement. Indeed, the plan administrator testified that in prior cases presenting the same circumstances as the instant case, the city had provided disability pension and workers' compensation benefits according to the express terms of the plan.
Accordingly, we conclude that the city is bound by the provisions of the Pensacola Code which entitle claimant to receipt of the full amount of workers' compensation benefits to which he is entitled, as well as to his full disability pension, and therefore affirm the appealed workers' compensation order in all respects.
SHIVERS, C.J., and ZEHMER, J., concur.